## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

| | |
|---|---|
| ADRIANA KAIBLE, individually and on behalf of all others similarly situated,<br><br>     *Plaintiff,*<br><br>  v.<br><br>THE GAP, INC., a Delaware corporation and OLD NAVY, LLC, a Delaware limited liability company,<br><br>     *Defendants.* | Case No. 17-cv-62408-RNS |

## DEFENDANT GAP'S MOTION TO DISMISS THE AMENDED COMPLAINT, OR TO STRIKE THE PUTATIVE CLASS ALLEGATIONS, OR IN THE ALTERNATIVE, TO STAY THE CASE

Defendants The Gap, Inc. and Old Navy, LLC (collectively, "Gap" or "Defendants") respectfully move the Court pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), for an order dismissing Plaintiff Adriana Kaible's Amended Complaint, or to strike the putative class allegations pursuant to Rule 12(f), or in the alternative, to stay the case pursuant to the Court's inherent authority.

### INTRODUCTION

Ms. Adriana Kaible ("Plaintiff") has filed a putative class action against Defendants alleging violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b), for sending text messages using an automatic telephone dialing system ("autodialer") to Plaintiff's cellular phone that exceeded her consent. This case is one of the many "gotcha"-type putative class action lawsuits that have clogged federal courts' dockets in recent years, seeking to capitalize

on the statutory damages afforded by the TCPA. Plaintiff's lawsuit is fatally flawed and must be dismissed with prejudice.

*First*, Plaintiff lacks standing to bring this suit because she has not alleged a concrete and particularized injury. The Amended Complaint fails to specify how any of the alleged text messages in excess of one per week harmed Plaintiff. Thus, it must be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).

*Second*, the Amended Complaint does not state a claim that Gap violated the scope of Plaintiff's prior express written consent and must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

If the Court declines to grant Gap's motion to dismiss, it should strike Plaintiff's class allegation from the Amended Complaint pursuant to Fed. R. Civ. P. 12(f) because her proposed class is impermissibly fail-safe. Because Plaintiff's alleged class precludes membership unless Gap's liability is established, and because it requires individualized merit-based determinations to ascertain class membership, it is facially invalid.

If the Court declines to grant Gap's motion to dismiss, it should stay the case pending the resolution of two ongoing proceedings: *ACA International*,[1] pending before the D.C. Circuit, and *Salcedo*,[2] pending before the Eleventh Circuit.[3] These proceedings will clarify two dispositive issues in this case: (1) what constitutes an autodialer and (2) what constitutes a concrete injury-in-fact under the TCPA to establish Article III standing.

---

[1] *ACA Int'l v. FCC*, No. 15-1211 (D.C. Cir. filed July 10, 2015).

[2] *Salcedo v. Hanna*, No. 16-cv-62480-GAYLES, 2017 WL 4226635 (S.D. Fla. June 14, 2017), *appeal docketed*, No. 17-14077 (11th Cir. Sept. 13, 2017).

[3] The Court should grant a stay only if it determines that the law is insufficiently clear for it to dismiss the case now. However, as Parts I, II, and III of this memorandum demonstrate, the law is sufficiently clear such that, under well-established precedent, the Court can and should dismiss the case without any delay.

DEVINE GOODMAN RASCO & WATTS-FITZGERALD, LLP
2800 PONCE DE LEON BOULEVARD | SUITE 1400 | CORAL GABLES, FLORIDA 33134 | P 305.374.8200 | F 305.374.8208

## FACTUAL BACKGROUND

On October 7, 2014, while shopping at an Old Navy store, Plaintiff alleges seeing an advertisement promoting additional "exclusive offers and sneak peaks," by "sign[ing] up for mobile alerts." Am. Compl. ¶ 37. Plaintiff admits that she signed up for mobile alerts but contends that Gap texted her "without regard to the limited scope of consent." *Id.* ¶ 82; *see also id.* ¶ 47 ("Even though [Plaintiff] consented to only one (1) text message per week, [Plaintiff] often received more than one message per week."). Plaintiff alleges that these unspecified texts violated the TCPA and caused her an "invasion of [] privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion." *Id.* ¶ 5.

On December 7, 2017, Plaintiff filed the initial Class Action Complaint (the "Complaint") against Gap and its subsidiaries. The Complaint alleged that Gap violated the TCPA by sending Plaintiff unwanted text messages. Compl. ¶¶ 33-38, 41. Plaintiff further claimed that she received these promotional text messages even though she never signed up for them, *see id.* ¶ 41,[4] and despite the fact that her number appeared on the national do-not-call registry. *Id.* ¶ 43.

On January 23, 2018, Plaintiff filed the First Amended Class Action Complaint ("Amended Complaint") asserting a wholly different theory of TCPA liability. *Compare* Am. Compl. ¶¶ 47, 82, *with* Compl. ¶¶ 41, 43. In the Amended Complaint, Plaintiff admits that she voluntarily enrolled in Gap's mobile alert program and that she confirmed her consent by replying "Y" to the confirmation text she received. *See* Am. Compl. ¶¶ 40-41. Plaintiff abandons altogether the theory that she was on a "Do Not Call Registry." Instead, she claims Gap violated the TCPA by "often"

---

[4] Stating "[a]t no point in time did [Plaintiff] provide [Gap] with her express written consent to be contacted by text for marketing purposes using an ATDS."

DEVINE GOODMAN RASCO & WATTS-FITZGERALD, LLP
2800 PONCE DE LEON BOULEVARD | SUITE 1400 | CORAL GABLES, FLORIDA 33134 | P 305.374.8200 | F 305.374.8208

sending her more than one text message per week without her "prior express consent." *Id.* ¶¶ 47, 88-89.

Plaintiff brings this action on behalf of "The Text Message Overage Class," who "were … sent more than one message per week on at least one occasion." *Id.* ¶ 67. For relief, Plaintiff seeks an order certifying the proposed class, "up to $1,500.00" for each text that constituted a "knowing and/or willful" violation of the TCPA, "$500.00 damages for each violation," attorneys' fees and costs, and "injunctive relief" "against future calls." *Id.* ¶¶ 7, 85, 91.

## ARGUMENT

### I.   Plaintiff Lacks Article III Standing

#### A.   Legal Standard

Article III of the Constitution limits the jurisdiction of the federal courts to the consideration of "Cases" and "Controversies." U.S. Const. art. III, § 2. The "triad of injury in fact, causation, and redressability constitutes the core of Article III's case-or-controversy requirement, and the party invoking federal jurisdiction bears the burden of establishing its existence." *Parker v. Scrap Metal Processors, Inc.,* 386 F.3d 993, 1003 (11th Cir. 2004) (citation omitted). To establish the "injury in fact" component of Article III standing, Plaintiff must allege that she suffered "a harm … that is concrete and actual or imminent, not conjectural or hypothetical." *Id.* "Because standing is jurisdictional, a dismissal for lack of standing has the same effect as a dismissal for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1)." *Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008) (quoting *Cone Corp. v. Fla. Dep't of Transp.*, 921 F.2d 1190, 1203 n. 42 (11th Cir. 1991)). An injury is concrete where it is "real, and not abstract." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (internal quotations omitted). An injury is particularized when it "affect[s] the plaintiff in

DEVINE GOODMAN RASCO & WATTS-FITZGERALD, LLP
2800 PONCE DE LEON BOULEVARD | SUITE 1400 | CORAL GABLES, FLORIDA 33134 | P  305.374.8200 | F  305.374.8208

a personal and individual way." *Id.* at 1543 (internal citation omitted). "The requirement of injury in fact is a hard floor of Article III jurisdiction that cannot be removed by statute." *Summers v. Earth Island Institute*, 555 U.S. 488, 497 (2009).

In *Spokeo, Inc. v. Robins*, the Supreme Court clarified that a "concrete" injury is a real-world injury suffered by a plaintiff that "must actually exist." *Spokeo*, 136 S. Ct. at 1548. A bare statutory violation, one "divorced from any concrete harm," cannot serve to confer standing. *Id.* at 1549-50. Therefore, "an asserted injury to even a statutorily conferred right 'must actually exist,'" and "the legislature cannot dispense with the constitutional baseline of a concrete injury in fact." *Hancock v. Urban Outfitters, Inc.*, 830 F.3d 511, 514 (D.C. Cir. 2016) (citing *Spokeo*, 136 S. Ct. at 1549).

### B.    Plaintiff's Alleged Harm is Not Sufficient to Confer Standing

The Amended Complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) because it does not allege that Plaintiff suffered an injury-in-fact.

Plaintiff admits that she *voluntarily* enrolled in Old Navy's mobile alert program. *See* Am. Compl. ¶ 41. Thus, the pertinent question that Plaintiff fails to address is how allegedly receiving more than one advertising text message per week creates *concrete harm* adequate to confer Constitutional standing. The Amended Complaint provides a recitation of the elements of a TCPA violation but fails to specify how any of the alleged text messages in excess of one per week harmed Plaintiff. Courts have repeatedly held that TCPA violations alone do not satisfy the injury-in-fact requirement of standing. *See, e.g., Romero v. Dep't Stores Nat'l Bank*, 199 F. Supp. 3d 1256, 1265 (S.D. Cal. 2016) ("[T]he mere dialing of a cellular telephone number using an ATDS ... does not cause an injury to the recipient."). That the TCPA allows private suits for such calls does not somehow elevate this non-injury into a concrete injury sufficient to create Article III

DEVINE GOODMAN RASCO & WATTS-FITZGERALD, LLP
2800 PONCE DE LEON BOULEVARD | SUITE 1400 | CORAL GABLES, FLORIDA 33134 | P 305.374.8200 | F 305.374.8208

standing."); *Nicklaw v. CitiMortgage, Inc.*, 839 F.3d 998, 1002-03 (11th Cir. 2016) ("[C]oncreteness under Article III is not satisfied every time a statute creates a legal obligation and grants a private right of action for its violation ... the relevant inquiry is whether [the plaintiff] was harmed when this statutory right was violated.").

Plaintiff relies on a conclusory one-sentence allegation that Defendant invaded her privacy. *See* Am. Compl. ¶ 5. Though she lists "invasion of [] privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion" as alleged harms, these are clearly insufficient to confer standing under *Spokeo*. Courts have held that alleged harms of "invasion of [] privacy" (and its synonym, "intrusion on seclusion"), "aggravation," and "annoyance" are insufficient to confer standing in situations much more egregious than alleged by Plaintiff. *See, e.g., Zemel v. CSC Holdings LLC*, No. 16-4064-BRM-DEA, 2017 WL 1503995, at *5 (D.N.J. Apr. 26, 2017) (Plaintiff lacked standing where he alleged "actual harm, including aggravation, nuisance, and invasion of privacy that necessarily accompanies the receipt of unsolicited text messages" because "[t]his allegation is nothing but a bare conclusory assertion. Plaintiff has failed to demonstrate how three text messages, one which was initiated by Plaintiff ... are a nuisance or an invasion of his privacy."); *Smith v. Aitima Med. Equip., Inc.*, No. ED CV 16-00339-AB (DTBx), 2016 WL 4618780, at *3 (C.D. Cal. July 29, 2016) (Plaintiffs' allegations of "aggravation, nuisance, and invasion of privacy" as a result of "unsolicited and harassing telephone calls" were insufficient). Moreover, Plaintiff does not allege a single fact to support her alleged harms of "trespass" and "conversion." Am. Compl. ¶ 5. Plaintiff's failure to plead a concrete harm arising from any text that exceeded the scope of her consent is fatal to her claim. *Spokeo*, 136 S. Ct. at 1548; *see also Gesten v. Burger King Corp.*, No. 17-22541-Civ-Scola, 2017 WL 4326101, at *5 (S.D. Fla. Sept. 27, 2017) (Scola, J.) (noting "procedural violation[s] that may result in no harm," are insufficient

6

to satisfy the requirement of concreteness, "in contrast to the examples of statutory violations that constitute concrete injuries in and of themselves.").[5]

## II.     Plaintiff Fails to State a Claim Under Fed. R. Civ. P. 12(b)(6)

### A.     Legal Standard

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted).   To meet this standard, a plaintiff must "provide the grounds of his entitlement to relief [through] more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations and alterations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Ashcroft*, 556 U.S. at 678.   Allegations that are of a "conclusory nature" are "disentitle[d] ... to the presumption of truth."   *Id.* at 681; *see also Am. Dental Ass'n. v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (courts deciding motions to dismiss should "eliminate any allegations in the complaint that are merely legal conclusions.").

In addition, Fed. R. Civ. P. 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *D'Alessandro v. Nationstar Mortg., LLC*,

---

[5] While the Eleventh Circuit has yet to address *Spokeo's* application to a case like this one, an interlocutory appeal currently pending at the Eleventh Circuit is very likely to address this issue. *See Salcedo v. Hanna*, No. 16-cv-62480-GAYLES, 2017 WL 4226635 (S.D. Fla. June 14, 2017), *appeal docketed*, No. 17-14077 (11th Cir. Sept. 13, 2017).   The law is sufficiently clear such that, under well-established precedent, the Court should dismiss this action pursuant to Fed. R. Civ. P. 12(b)(1).   However, if the Court believes the law is insufficiently clear for it to dismiss the case now, then it can, in the alternative, stay the case pending the resolution of *Salcedo*. *See supra* at 19.

DEVINE GOODMAN RASCO & WATTS-FITZGERALD, LLP

2800 PONCE DE LEON BOULEVARD | SUITE 1400 | CORAL GABLES, FLORIDA 33134 | P 305.374.8200 | F 305.374.8208

No. 13-81189-CIV-DIMITROULEAS, 2014 WL 12588651, at *1 (S.D. Fla. Mar. 17, 2014) (internal citation omitted).  Plaintiff's bare allegation that Gap exceeded the scope of her consent is too conclusory to satisfy even the minimal requirement of Fed. R. Civ. P. 8 and, therefore, fails to state a claim under Fed. R. Civ. P. 12(b)(6).

### B.   Plaintiff Fails to State a Plausible Claim

The TCPA prohibits the making of "any call (other than a call … made with the prior express consent of the called party) using any automatic telephone dialing system … to any telephone number assigned to a . . . cellular telephone service."[6] 47 U.S.C. § 227(b)(1)(A).  To succeed, Plaintiff must establish that Gap: (1) sent a text to her cell phone, (2) using an automated telephone dialing system, commonly referred to as an ATDS or an autodialer, (3) without her prior express written consent. *Duran v. Wells Fargo Bank, N.A.*, 878 F. Supp. 2d 1312, 1316 (S.D. Fla. 2012) (quoting 47 U.S.C. § 227(b)(1)(A)(iii)).

Plaintiff asserts that Gap violated the third element when it sent her cell phone "illegal marketing text messages . . . for goods . . . in violation of the express scope of consent . . . required . . . under the TCPA." Am. Compl. ¶ 2.  Plaintiff contends that Gap violated this element because "[e]ven though [she] consented to only one (1) text message per week, [she] often received more than one message per week." *Id.* ¶ 47.  However, Plaintiff fails to include anything else other than a bare assertion that "[t]hese calls were made without regard to the limited scope of consent." *Id.* ¶ 82.  This conclusory statement is insufficient to meet "the threshold requirement of Rule 8(a)(2) that the 'plain statement' possess enough heft to show that the pleader is entitled to relief." *Bell*

---

[6] Text messages constitute calls within the meaning of the TCPA. *See Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991, et al.*, Declaratory Ruling & Order, 30 FCC Rcd. 7961, 8021-22 (2015) ("2015 Omnibus Order").

DEVINE GOODMAN RASCO & WATTS-FITZGERALD, LLP
2800 PONCE DE LEON BOULEVARD | SUITE 1400 | CORAL GABLES, FLORIDA 33134 | P 305.374.8200 | F 305.374.8208

*Atl. Corp.,* 550 U.S. at 557; *see also Varner v. Domestic Corp.*, No. 16-22482-CIV-Scola, 2017 WL 3730618, at *15 (S.D. Fla. Feb. 7, 2017) (Scola, J.) (finding that "[e]ven under the more relaxed pleading standards of Rule 8(a)," complaint was insufficient to survive a motion to dismiss where it lacked *any* facts regarding the misrepresentations). Plaintiff does not provide any details that could "nudge" her claim about consent "across the line from conceivable to plausible." *Bell Atl. Corp.*, 550 U.S. at 570; *Harding v. NCL (Bahamas) Ltd.*, 90 F. Supp. 3d 1305, 1308 (S.D. Fla. 2015) (granting motion to dismiss because Plaintiff's allegations were "bereft of supporting facts"); *Navarro v. City of Riviera Beach*, 192 F. Supp. 3d 1353, 1359 (S.D. Fla. 2016) (granting motion to dismiss because complaint must provide "more than labels and conclusions").

Numerous courts in this Circuit have dismissed TCPA cases at the pleading stage for failing to specify details regarding the texts, calls, or faxes plaintiffs may have received. *See Duran*, F. Supp. 2d at 1316 (dismissing TCPA complaint where the "[p]laintiff provide[d] no facts whatsoever about any automated or pre-recorded calls Defendant allegedly made" and "allege[d] in a conclusory manner that Defendant placed '*many*' non-emergency calls to his cellular phone") (emphasis added); *Daisy, Inc. v. Pollo Operations, Inc.*, No. 2:14-cv-564-FTM-38-CM, 2015 WL 1418607, at *6 (M.D. Fla. Mar. 27, 2015) (dismissing complaint that did not specify "*the number* of facsimiles, the *time and date* they were sent, and the *names* of the recipients," as insufficient to state a claim) (emphasis added); *Speidel v. JP Morgan Chase & Co.*, No. 2:13-cv-852-FTM-29DNF, 2014 WL 582881, at *2 (M.D. Fla. Feb. 13, 2014) (dismissing TCPA claim for "lack[ing] adequate factual support" where the plaintiff's "allegations ... failed to identify the nature of the calls"). This Court should do the same.

DEVINE GOODMAN RASCO & WATTS-FITZGERALD, LLP
2800 PONCE DE LEON BOULEVARD | SUITE 1400 | CORAL GABLES, FLORIDA 33134 | P 305.374.8200 | F 305.374.8208

III.    **The Court Should Strike Plaintiff's Class Allegation Pursuant to Fed. R. Civ. P. 12(f) Because It Is Impermissibly Fail-Safe**

If the Court declines to dismiss this case, it should strike Plaintiff's class allegation from the Amended Complaint pursuant to Fed. R. Civ. P. 12(f) because her proposed class is impermissibly fail-safe. Because Plaintiff's alleged class precludes membership unless Gap's liability is established, and because it requires individualized merit-based determinations to ascertain class membership, it is invalid on its face.

Under Rule 12(f), "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Fail-safe classes, which are defined so that they include only individuals who are entitled to relief, are not viable. *See Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 824 (7th Cir. 2012) ("[S]uch a class definition is improper because a class member either wins or, by virtue of losing, is defined out of the class and is therefore not bound by the judgment."); *Kamar v. RadioShack Corp.*, 375 Fed. Appx. 734, 736 (9th Cir. 2010) (same). Although the Eleventh Circuit has not yet weighed in on this issue, "case law within this Circuit and persuasive Circuit-level authority indicates that a class cannot be certified where the proposed class definition employs conclusory language identifying class membership in terms of the ultimate merits question of the defendant's liability." *Alhassid v. Bank of America, N.A.*, 307 F.R.D. 684, 693 (S.D. Fla. 2015). To preserve judicial economy, this Court should strike Plaintiff's proposed fail-safe class now, rather than waiting until the class certification stage.

Numerous courts have stricken TCPA class allegations, like Plaintiff's, when the proposed class consists of an improper fail-safe class. *See, e.g., Zarichny v. Complete Payment Recovery Servs., Inc.*, 80 F. Supp. 3d 610, 625 (E.D. Pa. 2015) (dismissing TCPA class allegations because plaintiff alleged a fail-safe class); *Kissling v. Ohio Casualty Ins. Co.*, No. 5:10-22-JMH, 2010 WL

DEVINE GOODMAN RASCO & WATTS-FITZGERALD, LLP
2800 PONCE DE LEON BOULEVARD | SUITE 1400 | CORAL GABLES, FLORIDA 33134 | P 305.374.8200 | F 305.374.8208

1978862, at *2 (E.D. Ky. May 14, 2010) (dismissing class allegations because the proposed class "is a fail-safe class which is fatally flawed," in that a "'ruling in favor of the defendant on liability would mean there is no class, so no unnamed plaintiffs could be bound by the unfavorable decision; yet these plaintiffs would have the full benefit of any decision in their favor'"); *Sauter v. CVS Pharmacy, Inc.*, No. 2:13-cv-846, 2014 WL 1814076, at *9 (S.D. Ohio May 7, 2014) (same).

These courts reason that fail-safe classes waste a court's time in conducting "mini-trials," about which individuals should be included in the class before the merits stage, *Wolfkiel v. Intersections Ins. Servs. Inc.*, 303 F.R.D. 287, 294 (N.D. Ill. 2014), but, more fundamentally, that fail-safe classes would allow unscrupulous plaintiffs to create an end run around the claim preclusion aspects of a class action. *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 538 (6th Cir. 2012). Certifying a fail-safe class "is prohibited because it would allow putative class members to seek a remedy but not be bound by an adverse judgment—either those class members win or, by virtue of losing, they are not in the class and are not bound." *Id.* (internal quotation omitted).

Plaintiff's class allegations are precisely the type of fail-safe classes which this Court, and others, have deemed impermissible. Plaintiff's proposed class is:

> ***"The Text Message Overage Class"*** All persons within the United States who, within the four years prior to the filing of this Complaint, agreed to receive one (1) text message per week made through the use of any automatic telephone dialing system from Defendant Gap, their subsidiaries, or anyone on their subsidiaries' behalf, to said person's cellular telephone number but were in fact sent more than one message per week on at least one occasion.

Am. Compl. ¶ 67.

Membership in the class cannot be ascertained until this Court determines whether members in the purported class "agreed to receive one (1) text message per week" from Gap and

11

whether Gap "sent more than one message per week on at least one occasion." *Id.* This is the key issue with respect to liability, *i.e.*, whether Gap exceeded the scope of the proposed class members' consent. When sending out class notices for this class, or otherwise ascertaining class membership, the Court would have to conduct a mini-trial on who Gap texted during the limitations period, whether Gap used an autodialer, and whether a putative class member agreed to receive more than one text message per week. If the Court determined someone qualified as a member of the class, there is nothing else class counsel would have to demonstrate for that class member to win on the merits.[7] If the Court determined someone did not qualify as a member of the class (or that *no one* qualifies as a member of the class), that person would be entirely free to bring a TCPA claim in a different court *even though* the Southern District of Florida decided that Gap did not send them more than one text message per week on their cell phone, using an autodialer. Either the class members win or, by virtue of losing, they are not bound by any adverse judgment—and can pursue the same claims in the future—because they were never part of the class to begin with. *Messner*, 669 F.3d at 825; *Alhassid*, 307 F.R.D. at 693.[8] This is the textbook definition of a fail-safe class, as this Court explained in *Alhassid*:

> Each of Plaintiff's nine proposed class definitions is an impermissibly fail-safe class. Membership in each class is dependent on whether Nationstar violated HUD guidelines or Nationstar's own internal policies and procedures with respect to the given fee or charge assessed. *This front-ends a merits determination on Nationstar's liability as the essential element in class composition.* The Court would essentially have to make a

---

[7] This is not intended as a concession as to any argument on the merits. Defendants do not concede that sending multiple texts constitutes a per se violation of the TCPA.

[8] *See also Hurt v. Shelby Cty. Bd. of Educ.*, No. 2:13-cv-230-VEH, 2014 WL 4269113, at *1 (N.D. Ala. Aug. 21, 2014) (proposed class was impermissibly fail-safe because class membership "hinge[s] on finding that any given plaintiff had a viable claim"); *Genenbacher v. CenturyTel Fiber Co. II*, 244 F.R.D. 485, 488 (C.D. Ill. 2007) ("This type of class definition is called a 'fail safe' class because the class definition precludes the possibility of an adverse judgment against class members; the class members either win or are not in the class.").

> determination that [Nationstar] is liable to an individual before it
> could conclude that the individual is a member of the class….
> Therefore, as presently stated, Plaintiffs' proposed classes are
> unascertainable.

*Id.* at 694 (internal citations omitted) (emphasis added).

A majority of courts to have decided the issue have stricken fail-safe class allegations before discovery in TCPA putative class actions. *See, e.g. Zarichny*, 80 F. Supp. 3d at 625-26; *Dixon v. Monterey Financial Services*, No. 15-cv-03298-MMC, 2016 WL 4426908, at *2 (N.D. Cal. Aug. 22, 2016); *Sauter*, 2014 WL 1814076, at *9; *G.M. Sign, Inc. v. Franklin Bank, S.S.B.*, 2007 WL 4365359, at *3 (N.D. Ill Dec. 13, 2007). Where, as here, a class allegation is fail-safe, "fairness and efficiency require that the Court address the issue in response to a properly filed motion" to strike it before discovery begins. *Boyer v. Diversified Consultants, Inc.*, 306 F.R.D. 536, 538 (E.D. Mich. 2015); *see also Carrera v. Bayer Corp.*, 727 F.3d 300, 307 (3d Cir. 2013) ("a trial court should ensure that class members can be identified without extensive and individualized fact-finding or mini-trials") (internal quotations omitted).

## IV.  In the Alternative, the Court Should Stay this Case if it Determines Dismissal is Unwarranted Without Further Guidance

If the Court declines to grant Defendants' motion to dismiss, it should grant a stay while the D.C. Circuit reviews the definition of "autodialer" and while the Eleventh Circuit decides what constitutes a concrete injury-in-fact under the TCPA sufficient to confer Article III standing.

### A.  Legal Standard

This Court has "the power to issue . . . a stay" pursuant to its "inherent authority to control its docket and manage its cases efficiently." *NIACCF, Inc. v. Cold Stone Creamery, Inc.*, No. 12-20756-Civ., 2012 WL 1852941, at *1 (S.D. Fla. May 21, 2012) (Scola, J.). In deciding whether to grant a stay, district courts must balance the competing interests of the parties and the interest

DEVINE GOODMAN RASCO & WATTS-FITZGERALD, LLP
2800 PONCE DE LEON BOULEVARD | SUITE 1400 | CORAL GABLES, FLORIDA 33134 | P 305.374.8200 | F 305.374.8208

of the judicial system. *See Ortega Trujillo v. Conover & Co. Commc'ns, Inc.*, 221 F.3d 1262, 1264 (11th Cir. 2000). Relevant factors include whether the stay requested will: (1) simplify the issues in question; (2) reduce the burden of litigation on the parties and on the court; and (3) unduly prejudice or tactically disadvantage the non-moving party. *Saleh v. Me Bath SpA Experience, LLC*, No. 17-cv-62322-BLOOM/Valle, 2018 WL 398325, at *1 (S.D. Fla. Jan. 12, 2018). If a district court stays a case pending the resolution of related proceedings in another forum, it "must limit properly the scope of the stay." *Id.* at *2. The court "must consider the relative prejudice and hardship 'worked on each party if a stay is or is not granted,' and general efficiency." *Jacobs v. Ocwen Loan Servicing, LLC*, No. 16-62318-Civ-Scola, 2017 WL 1733855, at *1 (S.D. Fla. Apr. 14, 2017) (Scola, J.) (internal citations omitted).

### B.      The Court Should Stay This Case Pending *ACA International*

At a minimum, in the interest of judicial efficiency, this Court should stay this case for a relatively short period of time until the D.C. Circuit Court of Appeals issues an opinion in the consolidated appeal of *ACA International* regarding the validity of the FCC's 2015 Order. The ruling in *ACA International* will bear on whether Gap used an "autodialer" for purposes of the TCPA. Consequently, further litigation absent a ruling may be unnecessary and will require both the parties and the Court to spend substantial resources. Briefing and oral arguments have been completed in *ACA International* as of October 2016 and a decision by the D.C. Circuit is forthcoming.

The TCPA makes it "unlawful ... to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system ...." 47 U.S.C. § 227(b)(1)(A). The term autodialer "means equipment which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential

DEVINE GOODMAN RASCO & WATTS-FITZGERALD, LLP
2800 PONCE DE LEON BOULEVARD | SUITE 1400 | CORAL GABLES, FLORIDA 33134 | P  305.374.8200 | F  305.374.8208

number generator; and (B) to dial such numbers." *Id.* § 227(a)(1). In 2015, the FCC declared that an autodialer has the "capacity" to generate random or sequential numbers if it has the "potential ability" to do so. *Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991, et al.*, Declaratory Ruling & Order, 30 FCC Rcd. 7961, 7975 (2015) ("2015 Omnibus Order"). In defining autodialer so broadly, the FCC rejected a definition that would interpret the word "capacity" to mean "current capacity" or "present ability." *Id.* at 7974 (stating "the capacity of an autodialer is not limited to its current configuration but also includes its potential functionalities.").

The 2015 Omnibus Order was appealed immediately after it was issued. The appeal requests the D.C. Circuit to find, among other things, that the FCC "interpreted ATDS in a way that unlawfully turns on the equipment's potential rather than present abilities, nullifies the statutory random-or-sequential-number-generation requirement, and provides inadequate guidance to regulated parties." Joint Brief for Petitioners at 4, ACA Int'l v. FCC, No. 15-1211 (D.C. Cir. Nov. 25, 2015).

Staying this case pending a decision in *ACA International* will conserve judicial resources. The D.C. Circuit's ruling regarding whether the FCC's overly broad definition of "autodialer" is unlawful may result in the dismissal of this lawsuit or, at the very least, provide clear guidance on key TCPA provisions that will shape and inform the contours of this proceeding. *See Saleh*, 2018 WL 398325, at *2 (finding that "[s]uch a clarification will assist the Court in adjudicating the issues, will frame the pertinent discovery for the parties, and will conserve judicial resources."); *Jacobs*, 2017 WL 1733855, at *2 ("A stay will conserve judicial resources") (collecting cases); *see also Miccosukee Tribe of Indians of Florida v. S. Florida Water Mgmt. Dist.*, 559 F.3d 1191, 1198 (11th Cir. 2009) (finding that the district court's reason for staying the case—"to await a

15

federal appellate decision that is likely to have a substantial or controlling effect on the claims and issues" in the case—was an "excellent" reason for staying the case). The definition of autodialer is a threshold issue in this case. *See Jacobs*, 2017 WL 1733855, at *2 ("Whether [d]efendants used an [autodialer] when making telephone calls to [p]laintiff is a threshold issue for liability under the TCPA.").

By proceeding now, this Court will have to consider not only whether Gap used an autodialer when sending the texts in question, but also what standard to apply. *Id.* (granting stay in TCPA case pending "outcome of *ACA International*" since "the Court would still need to determine whether [defendant] used an [autodialer], as defined in the FCC Order or possibly as redefined by the D.C. Circuit."). Should the D.C. Circuit vacate the 2015 Omnibus Order and adopt a narrower definition of autodialer to mean only equipment with a "present capability"— rather than a theoretical or potential capability to randomly or sequentially dial numbers—Plaintiff will have to amend her pleading to allege non-conclusory facts to satisfy this element.[9]

A temporary stay will not prejudice Plaintiff. Plaintiff claims only statutory damages, not any actual losses stemming from the alleged illegal text message. Thus, the prejudice resulting from a delay in any eventual recovery would be minimal. *Leysoto v. Mama Mia I., Inc.*, No. 08-60750-CIV-SEITZ/O'SULLIVAN, 2009 WL 10668560, at *2 (S.D. Fla. Jan. 26, 2009) (holding that "[p]laintiff, who alleges no actual economic injury, will incur minimal prejudice in postponing the dispute."). Because this case is at its beginning stages, a stay would allow Plaintiff to conduct discovery in an efficient manner, simplify the case and conserve judicial resources. *Saleh*, 2018

---

[9] Plaintiff may object to staying this case pending the appeal because the FCC may prevail in the case and, even if the FCC loses, the D.C. Circuit's decision would not bind this Court. However, while the D.C. Circuit's decision to overturn the FCC's definition of autodialer will not bind this Court in determining the proper definition, it will prevent this Court from being required to defer to the FCC's definition.

DEVINE GOODMAN RASCO & WATTS-FITZGERALD, LLP
2800 PONCE DE LEON BOULEVARD | SUITE 1400 | CORAL GABLES, FLORIDA 33134 | P 305.374.8200 | F 305.374.8208

WL 398325, at *2 (staying TCPA case because "[w]aiting for a ruling from the D.C. Circuit will benefit both parties as it will clarify the definition of [autodialer]"); *Coatney v. Synchrony Bank*, No. 6:16-cv-389-Orl-22TBS, 2016 WL 4506315, at *2 (M.D. Fla. Aug. 2, 2016) (noting "the potential prejudice is minimal," where "[p]laintiff has not shown the [s]he will be prejudiced by a stay at such an early stage in the litigation."). Conversely, failure to grant a stay would unduly prejudice Gap. Having the definition of the term "autodialer" remain unsettled would force Gap to "suffer hardship in conducting discovery and trial preparation," because it will have to proceed as if *either* definition of autodialer might apply. *Errington v. Time Warner Cable Inc.*, No. 2:15-cv-02196 RSWL (DTB), 2016 WL 2930696, at *4 (C.D. Cal. May 18, 2016).

As briefing for the D.C. Circuit appeal has already concluded, and oral argument was held on October 19, 2016, the delay is unlikely to be lengthy. *See Jacobs*, 2017 WL 1733855, at *2 ("Here, the Court also considers persuasive that oral arguments in *ACA International* occurred on October 19, 2016, and—far from 'indefinite' or 'indeterminate'—a decision remains imminent.").[10]

Many courts in this district have stayed cases where plaintiff filed a putative class action alleging violations of TCPA for sending text messages using an "autodialer" to a cellular without consent. *See id.*, at *1; *Saleh*, 2018 WL 398325, at *2. This is particularly true in cases where, as here, the parties have had limited opportunity to brief the issues and no opportunity to conduct discovery. *See Coatney*, 2016 WL 4506315, at *2 ("[T]he Court agrees with recent district court

---

[10] Several courts have decided to deny the requested stay as immoderate. However, many of those decisions denied the stay because the D.C. Circuit appeal was, at that time, in its infancy, making the length of the stay indeterminate. *See Sliwa v. Bright House Networks, LLC*, No. 16-CV-235-FTM-29MRM, 2016 WL 3901378, at *4 (M.D. Fla. July 19, 2016) ("First, there is no indication of when the D.C. Circuit will hear oral argument in *ACA International*, let alone issue an opinion.").

DEVINE GOODMAN RASCO & WATTS-FITZGERALD, LLP
2800 PONCE DE LEON BOULEVARD | SUITE 1400 | CORAL GABLES, FLORIDA 33134 | P 305.374.8200 | F 305.374.8208

decisions in the Eleventh Circuit that have found, under similar circumstances, that a stay pending the resolution of *ACA International* is warranted.") (collecting cases).   While a court cannot determine with certainty when the D.C. Circuit will issue its decision, Gap directs the Court to statistics revealing D.C. Circuit's median time from the filing of a notice of appeal until the disposition is 11.9 months.[11]  Given the D.C. Circuit's timeframe for issuing decisions, a resolution must be imminent.  *Saleh*, 2018 WL 398325, at *3 (adopting this line of reasoning to conclude "that a decision is imminent and any stay of these proceedings is likely to be brief.").   Given the imminence of the D.C. Circuit's decision, its potentially dispositive effect on this case, the conservation of judicial resources, and the lack of prejudice to Plaintiff, the Court should grant a limited stay.

       **C.**      **The Court Should Stay This Case Pending *Salcedo***

       The Court has separate grounds for granting a temporary stay until the Eleventh Circuit issues an opinion in the interlocutory appeal of *Salcedo v. Hanna*.   No. 16-cv-62480-GAYLES, 2017 WL 4226635 (S.D. Fla. June 14, 2017), *appeal docketed*, No. 17-14077 (11th Cir. Sept. 13, 2017).  *Salcedo* will answer a critical issue in this case.  Namely, what is "sufficient to constitute a concrete injury-in-fact such that [p]laintiff has Article III standing under *Spokeo* and *Nicklaw*." *Salcedo*, 2017 WL 4226635, at *1 (finding that "an interlocutory appeal is appropriate in light of ... *Spokeo* ... the Eleventh Circuit's ruling in *Nicklaw*, and the concurring opinions of Judges Pryor and Marcus in the Eleventh Circuit's denial of a rehearing *en banc* of *Nicklaw*.").

       As discussed above, to succeed in her claims that Gap invaded her privacy, *see* Am. Compl. ¶ 5, Plaintiff must allege a concrete injury sufficient to create Article III standing.  Yet Plaintiff

---

[11] *See* U.S. Court of Appeals – Judicial Caseload Profile,
http://www.uscourts.gov/sites/default/files/data_tables/fcms_na_appprofile0930.2017.pdf.

DEVINE GOODMAN RASCO & WATTS-FITZGERALD, LLP
2800 PONCE DE LEON BOULEVARD │ SUITE 1400 │ CORAL GABLES, FLORIDA 33134 │ P 305.374.8200 │ F 305.374.8208

only recites the elements of a TCPA violation and fails to specify how any of the alleged text messages in excess of one per week harmed her. But if the Court believes Plaintiff met her 12(b)(6) obligation, it must decide whether receiving more than one advertising text message per week constitutes an invasion of privacy that creates *concrete, actual harm* adequate to confer Constitutional standing. *Accord Nicklaw*, 839 F.3d at 1002 ("the relevant question is whether [the plaintiff] was harmed when this statutory right was violated").

The Eleventh Circuit's ruling on whether allegedly receiving one text message is sufficient to create Article III standing may result in the dismissal of this lawsuit or, at the very least, provide clear guidance on bare allegations of a statutory violation under the TCPA. As stated above, granting a stay would not unduly prejudice Plaintiff since this case remains in its beginning stages—discovery has yet to start—and Plaintiff claims only statutory damages, not any actual losses stemming from the alleged illegal text message. Thus, the prejudice resulting from a delay in any eventual recovery would be minimal. *Zia v. CitiMortgage, Inc.*, No. 15-23026-CIV, 2016 WL 1230597, at *3 (S.D. Fla. Mar. 22, 2016). Given the impact the decision in *Salcedo* will have on this case, the consequent conservation of judicial resources, and the lack of prejudice to Plaintiff, the Court should find that a limited stay is appropriate.

DEVINE GOODMAN RASCO & WATTS-FITZGERALD, LLP
2800 PONCE DE LEON BOULEVARD | SUITE 1400 | CORAL GABLES, FLORIDA 33134 | P 305.374.8200 | F 305.374.8208

## CONCLUSION

For the foregoing reasons, Gap respectfully requests that the Court dismiss the First Amended Complaint or strike the putative class allegations, or in the alternative, stay the case in its entirety pending the outcome of *ACA International* and *Salcedo*.

Dated: February 28, 2018

Guy A. Rascó (Florida Bar No.: 727520)
Averil Andrews (Florida Bar No.: 105700)
DEVINE GOODMAN RASCO &WATTS-
FITZGERALD LLP
2800 Ponce de Leon Blvd. Suite 1400
Coral Gables, Florida 33134
Tel.:   (305) 374-8200
Email: grasco@devinegoodman.com
       aandrews@devinegoodman.com

Jennifer P. Bagg (*pro hac vice*)
HARRIS, WILTSHIRE & GRANNIS LLP
1919 M Street NW, Eighth Floor
Washington, D.C. 20036
Tel.:   (202) 730-1300
Email: jbagg@hwglaw.com

Amy E. Richardson (*pro hac vice*)
HARRIS, WILTSHIRE & GRANNIS LLP
1919 M Street NW, Eighth Floor
Washington, D.C. 20036
Tel.:   (202) 730-1300
Email: arichardson@hwglaw.com
*Counsel for Defendants*

20

## CERTIFICATE OF SERVICE

I hereby certify that on February 28, 2018, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system. I also certify that the foregoing document is being served this day on all counsel of record identified in the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

Guy A. Rasco
*Co-counsel for Defendants*

## SERVICE LIST

Jibrael S. Hindi, Esq.
THE LAW OFFICE OF JIBRAEL S. HINDI, PLLC
110 SE 6th Street
Fort Lauderdale, Florida 33301 Telephone: (954) 907-1136
Facsimile: (855) 529-9540 jibrael@jibraellaw.com

Scott D. Owens
SCOTT D. OWENS, P.A.
3800 South Ocean Drive Suite 2345
Hollywood, Florida 33019
Telephone: (954) 589-0588
Facsimile: (954) 337-0666 scott@scottdowens.com

DEVINE GOODMAN RASCO & WATTS-FITZGERALD, LLP
2800 PONCE DE LEON BOULEVARD | SUITE 1400 | CORAL GABLES, FLORIDA 33134 | P 305.374.8200 | F 305.374.8208